UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 26-cr-00051-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CADEN ASHLEY ALLGOOD (01) | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

Caden Ashley Allgood ("Defendant") is charged with four counts of production of visual depictions involving the sexual exploitation of minors and four counts of coercion and enticement of a minor to engage in sexual activity. Before the court is Defendant's Motion to Suppress (Doc. 20), which seeks to suppress a recorded conversation and text message exchange between Defendant and his former girlfriend, Alexandra Rolfe. Defendant argues that the recording violated his right to counsel because Rolfe was acting as an agent for the Government when she made the recording. For the reasons that follow, it is recommended that the motion be denied.

## Relevant Facts

A hearing was held on the motion to suppress. The following facts were established. Agents with the Air Force Office of Special Investigations ("OSI") first interviewed Defendant in September of 2023. During that interview, Defendant said that he did not want to give a statement and that he wanted an attorney. Tr. 47. Defendant retained counsel to represent him in August 2024. Doc. 34, p. 1.

In August 2025, OSI agents learned that Defendant had requested to sponsor a foreign national, Alexandra Rolfe, to access Barksdale Airforce Base. The agents met Defendant and Rolfe at the gate and took Rolfe into the visitor center at the Barksdale main gate to interview her. Tr. 37-38.

Rolfe told the agents that she had dated Defendant for ten months beginning in the summer of 2024. During their relationship, Rolfe received anonymous messages on Instagram. The messages included screenshots of Defendant messaging other girls. Tr. 7. Defendant told Rolfe that the messages were merely an attempt to get Rolfe to break up with Defendant. Tr. 8.

Rolfe went home with a friend that night but talked to Defendant on the phone about the investigation. Defendant told Rolfe that the accusations were true. Tr. 11. Rolfe texted Agent Menanno and told him about her conversation with Defendant. The next day, Rolfe went to OSI for another interview. After that interview, Rolfe decided to record a conversation with Defendant. Her conversation with him lasted about 45 minutes. Rolfe asked Defendant about potential victims' names she heard from OSI. Tr. 24-25. After the conversation, Rolfe called Agent Menanno and told him she had a recording of Defendant that "might be useful." Tr. 24. Rolfe met with agents again the next day to give them the recording. Tr. 24.

Rolfe testified at the hearing that OSI did not ask her to record a conversation with Defendant and that she decided to do so on her own. Tr. 13. She stated that she wanted to "prove that he had said those things." Tr. 13. She clarified that OSI told her they sometimes facilitate recorded phone calls to solicit a confession but that the U.S. Attorney's

Office had stopped that plan in this case. Tr. 14, 32. She testified that she made the recording and gave it to agents "to get justice." Tr. 25. Defendant was ultimately indicted by a grand jury on February 4, 2026. Doc. 1.

**The Motion to Suppress**

Defendant raises two issues in his motion to suppress: (1) whether Alexandra Rolfe was working as a government agent when she recorded her conversation with Defendant and (2) whether the recorded conversation violated Defendant's right to counsel. Defendant represents that he was interviewed by OSI prior to his recorded conversation with Ms. Rolfe. During that interview, he invoked his right to remain silent and his right to have an attorney present during questioning. Defendant argues that OSI agents had Ms. Rolfe contact Defendant and attempt to elicit a recorded confession in violation of Defendant's Fifth Amendment rights, which he had already asserted, and in violation of his Sixth Amendment right to counsel. Defendant argues that because he was already represented by counsel, the Government could not attempt to make contact with him even through a third party.

**Law and Analysis**

**A. Introduction**

Defendant argues that Alexandra Rolfe was working as an agent for the Government when she recorded her phone call with Defendant. Defendant's position is that he was represented by counsel, and any communication with Defendant by a Government agent was therefore impermissible. Defendant points to inconsistencies prior to and during the suppression hearing regarding how many meetings Rolfe had with the OSI agents, whether

the meeting(s) were recorded, and whether and when the U.S. Attorney and agents knew that Defendant had retained counsel. Defendant concludes that the Government is not being forthright, and therefore any testimony that Rolfe was told by agents that they did not want her to go through with their plan to work together to elicit a recorded confession from Defendant is not credible. Based on forgoing, the court finds that Rolf was acting solely on her own behalf and was not acting as an agent for the government.

**B. Sixth Amendment Right to Counsel**

The Sixth Amendment is implicated whenever government agents deliberately elicit incriminating statements from the accused *after indictment* and in the absence of counsel. Massiah v. United States, 377 U.S. 201, 206 (1964). A Massiah violation has three elements: (1) the Sixth Amendment right to counsel has attached; (2) the individual seeking information from the defendant is a government agent acting without the defendant's counsel's being present; and (3) that agent deliberately elicits incriminating statements from the defendant." Canales v. Stephens, 765 F.3d 551, 571 (5th Cir. 2014), citing Henderson v. Quarterman, 460 F.3d 654, 664 (5th Cir. 2006). The right to counsel attaches when the defendant is indicted. Canales, 765 F.3d at 571. A Massiah violation can occur when the government agent is an undisclosed government informant. Id.

In this case, there is no Sixth Amendment violation because Defendant had not yet been indicted when the recording was made, and his Sixth Amendment right had not yet attached. See U.S. v. Heinz, 983 F.2d 609 (5th Cir. 1993) (right to counsel does not attach until or after the time formal adversary judicial proceedings have been initiated).

Defendant argues that because the Government knew Defendant was already represented by counsel, agents "were not allowed to contact him directly … without going through counsel." Doc. 40, p. 12. Defendant does not cite any authority for this assertion. The Fifth Circuit addressed this issue in Heinz. Heinz was the subject of an IRS investigation. When a search warrant was executed on Heinz's office, he was read his Miranda rights and he invoked his right to counsel. Heinz's counsel informed investigating agents that he was representing Heinz. Mitchell, who was an attorney who previously represented Heinz and who was another subject of the IRS investigation, agreed to cooperate with agents and had three monitored conversations with Heinz in the presence of one of the agents. The Fifth Circuit held that, regardless of whether the IRS agents knew that Heinz was represented by counsel, the conversations did not violate Heinz's Sixth Amendment rights because "the Sixth Amendment right to counsel does not attach until or after the time formal adversary judicial proceedings have been initiated." Heinz, 983 F.2d at 612. The Court also found that the conversations should not be suppressed based on violations of ethical canons because the ethical rule barring an attorney from communicating with a represented party "does not apply during the investigative process before the initiation of criminal proceedings." Id. at 613 (internal quotations omitted). The Court noted that a contrary ruling would stymie undercover operations because "any potential defendant without an attorney would hire an attorney (if he could afford to do so) in order to build a wall between himself and the government's investigators." Id. at 614.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 20) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of October, 2026.

Mark L. Hornsby
U.S. Magistrate Judge